Spencer R. Udell, Respondent, *v.* Illinois Central Railroad Company, Appellant.

### February 13, 1883.

Common Carriers — Negligence. — A carrier is not bound, as a matter of law, to furnish any particular kind of car for the transportation of perishable goods, yet a failure to do so may be a fact for the jury to consider in determining the question of negligence.

Appeal from the St. Louis Circuit Court, Adams, J.
*Affirmed.*

George P. Strong, for the appellant : Defendant was only liable for damages occasioned by its negligence or want of care in transporting the freight over its own road. No evidence of such want of care or negligence was given.— *Coates* v. *Express Co.*, 45 Mo. 238 ; *Vail* v. *Railroad Co.*, 63 Mo. 230 ; *Snider* v. *Express Co.*, 63 Mo. 376; *Grover Machine Co.* v. *Railroad Co.*, 70 Mo. 672 ; *St. Louis Ins. Co.* v. *Railroad Co.*, 13 Cent. L. J. 468. The plaintiff, by shipping his goods without any special contract for unusual care, when they were, or might be, exposed to danger from freezing, assumed the risk himself.— *Swetland* v. *Railroad Co.*, 102 Mass. 282,

J. D. Johnson, for the respondent : There can be no doubt of the appellant's liability under the law, if, through its negligence, the cheese in question was frozen. — See Hutch. on Car., sect. 180, and note 3, sect. 186 ; *Wolff* v. *American Express Co.*, 43 Mo. 421 ; *Sloan* v. *St. Louis*, 58 Mo. 220 ; *Read* v. *St. Louis*, 60 Mo. 199 ; *Priest* v. *Hannibal*, 62 Mo. 528 ; *Vail* v. *Pacific*, 63 Mo. 230.

Thompson, J., delivered the opinion of the court.

This is an action for damages for negligence in allowing a car-load of cheese to become frozen, which had been delivered to the defendant, as a common carrier, for trans-

portation. There was a verdict and judgment for the plaintiff.

The evidence substantially is, that the agents of the plaintiff at Sheboygan, Wisconsin, delivered to the Milwaukee, Lake Shore, and Western Railway Company eight hundred and forty-one boxes of cheese, consigned to the plaintiff at East St. Louis, Illinois. A bill of lading was issued, by the terms of which this railroad company was to transport the cheese to Milwaukee, and there deliver it to the Chicago and Northwestern Railway Company. The cheese was loaded into two cars of the class called refrigerator cars, which had been furnished by the defendant company. The evidence is, that the difference between refrigerator cars and ordinary box cars is, that refrigerator cars have double walls and double doors, which ordinary box cars have not, and that cheese shipped in refrigerator cars would be secure against freezing at a temperature about ten degrees lower than if shipped in good box cars. The cheese was loaded into these two cars at Sheboygan on the 27th of November, 1880. The weather was freezing, and some of it had been hauled eight miles in wagons from the factory. But notwithstanding this, the evidence tends to show that it was loaded into the cars in good condition. The two cars so loaded came on over the Milwaukee, Lake Shore, and Western road to Milwaukee, and from thence over the Chicago and Northwestern road to Chicago, where they arrived on the 2d day of December, and were delivered to the defendant company. Now, the defendant had, at this time, about seventy-five of these cars known as refrigerator cars, and it had a regulation that these cars were not to be sent to any point off its own road, except to points south of Cairo, when used for shipping beer to New Orleans, Memphis, and Vicksburg, over the Chicago, St. Louis, and New Orleans Railroad.

The cheese had been loaded in these two refrigerator cars by the Milwaukee, Lake Shore, and Western road, as it

would seem, either in ignorance or in violation of this rule of the defendant company. When these cars arrived at Chicago and were delivered to the defendant, the cheese in one of them was transferred into a common box freight car, No. 879. This car was sent forward over the defendant's road to Effingham, and from thence over the Vandalia road to East St. Louis, where it arrived on December 4th. Its contents were delivered to the plaintiff on the morning of December 6th. All of the cheese contained in this car was frozen hard. The other refrigerator car was sent forward by the defendant from Chicago to Effingham, where it arrived on the evening of December 3rd. The cheese which it contained was there transferred by the defendant to one of its box cars, No. 2567, and was sent in this car over the Vandalia road to East St. Louis, where it arrived on the evening of December 7th. None of the cheese in this car was frozen; but all of it when taken out of the car was in good condition. The evidence as to the condition of car No. 879 is conflicting. The plaintiff's evidence tends to show that it was old and rickety; that it had a window in one corner about a foot square, protected with an iron grating, which was open at the time when the contents of the car were delivered to the plaintiff; that some hay or straw — about a handful — had been thrown up against it; that, notwithstanding this, the witness could look through it from the inside of the car; and that only a little sprinkling of hay had been thrown over the cheese to protect it while in the car. It is admitted that this car was in the same condition when it left Chicago that it was in when it arrived at East St. Louis. The testimony of the defendant's agent is that, in transferring the cheese to car 879 at Chicago, they used the same straw for packing which had been used in the refrigerator car. It may be observed here that this statement of the defendant's witness might, perhaps, of itself, have warranted the jury in raising an inference of negligence; since the evidence clearly shows that cheeses in a box car would

require much more straw between them and the sides of the car to protect them from freezing at a given temperature, than they would require in a refrigerator car. It is true there was no evidence directed to this specific point; but the statements of the witnesses as to the difference between the two cars, and the superior capacity of the refrigerator cars to protect goods from freezing, leads irresistibly to this conclusion.

Objections were made by the defendant's counsel throughout the trial to the admission of any testimony as to the car which contained the cheese which did not freeze, how that car came through, what its character was, how the cheese was protected in it, etc. We think that these objections were not well taken. The evidence shows, without any dispute, that the cheeses which had been hauled eight miles and those which had been hauled two miles to the depot at Sheboygan were loaded indifferently into the two cars, and that some of the same brand were in each car. The evidence also tends very clearly to the conclusion that the freezing did not take place while the cheeses were in the refrigerator car, from which they were transferred to box car No. 879. The learned counsel for the defendant has not advanced the idea that they did; but he urges that the evidence leads to a strong inference that they were frozen before thay were loaded. Now, the facts being as stated, the fact that all the cheeses which had been transferred into the box car at Chicago arrived at East St. Louis in a frozen condition, and that none of those which had been transferred into the box car at Effingham were frozen when they arrived at East St. Louis, would lead to a strong inference that the freezing had taken place in consequence of some fault on the part of the defendant's agent in transferring the cheeses into the car No. 879, at Chicago, whether the fault may have consisted in exposing them to the open air in a freezing temperature at the time of the transfer, or in not protecting them sufficiently in the car,

or in leaving the window of the car open, or in the condition of the car itself. The history of the cheese in the other car became, therefore, plainly an evidential fact upon the question of the defendant's negligence, and a weighty fact, which every reasonable man would regard with more attention than the testimony of any witness.

The learned judge put the case to the jury upon the following instructions given of his own motion : " The court instructs the jury, that if the defendant railroad received the cheese in controversy, for transportation over its railroad, on the way to its destination at East St. Louis, it was bound to furnish reasonably safe and well protected cars in which to carry said merchandise, and in which to protect it against severity of the weather. If, therefore, you find from the evidence that the defendant negligently failed to provide such reasonably safe and well protected cars, or, having furnished such cars, negligently failed to use reasonable care in the packing of the merchandise therein, and if you find, as a consequence of either of the foregoing failures, the said merchandise was frozen and thereby injured while being transported over the defendant's railway, and if you further believe from the evidence that the cheese was the property of the plaintiff, then your verdict should be for the plaintiff.

" There was no obligation on the part of the railroad to provide any particular class of cars, whether refrigerator or otherwise, and all the evidence relative to the refrigerator or other cars before you is to be considered only in so far as it may have a bearing upon the issue whether or not the railroad used the reasonable care in the transporting of the merchandise heretofore referred to."

He also gave the following instruction at the request of the defendant : —

" The court instructs the jury, that, unless the plaintiff has proved to the satisfaction of the jury, by the evidence in this case, that plaintiff's cheese was injured by freezing

after it was received by defendant at Chicago, and before it was delivered to the Vandalia line at Effingham, and that such freezing was the direct result of negligence or want of reasonable care on the part of defendant, the jury will find for defendant."

He then refused the following instructions offered by the defendant : —

" The court instructs the jury, that upon the pleadings and evidence in this case, the plaintiff is not entitled to a verdict, and they will find for defendant.

" The court instructs the jury, that the defendant was not bound to forward plaintiff's cheese in its refrigerator cars, but was only required to ship said freight from Chicago in such cars as were ordinarily used for transporting such freight, to have said cars in good condition and properly closed, and to forward the same without unnecessary delay, and deliver it to the Vandalia road at the nearest or usual point for delivering freight to a connecting road running to East St. Louis ; and, unless the plaintiff has proved to the satisfaction of the jury that defendant neglected so to transport this freight, and that in consequence of such neglect or want of care, the cheese was frozen and damaged while on defendant's road, before it was delivered to the Vandalia road, they will find for defendant.

" The court instructs the jury, that the defendant was under no obligation to furnish refrigerator cars for the transportion of plaintiff's cheese, nor is the defendant responsible to plaintiff for any damage that may have been sustained by plaintiff's cheese, either before it reached defendant's road or after it reached the Vandalia road, nor for any damage it may have sustained even while in defendant's care, from freezing, unless such freezing was the direct consequence of defendant's negligence or want of reasonable care in the transportation of said cheese over its own line.

"The court instructs the jury, that if the cheese was damaged by freezing and without fault on the part of the defendant, then the defendant is not liable for any damages sustained by plaintiff, and they will find for defendant. And the court further instructs the jury, that defendant was under no obligation to furnish a refrigerator car for plaintiff's freight from Chicago to Effingham, and the refusal by defendant to allow their refrigerator car No. 16,033 to carry said freight from Chicago to Effingham, does not make defendant liable to plaintiff for said cheese or for any damage sustained by it by freezing."

We can see no ground whatever of complaint against these rulings. Let us look at them in the light of the objections which are made to them.

First, it is urged that the defendant is only liable for damages occasioned by its negligence in transporting the freight over its own road, and that there was no evidence of such negligence. The summary of facts above set out clearly shows that this position is not well taken. Secondly, it is urged that the defendant is not liable for the freezing of the cheese, unless the freezing was the result of its negligence ; that it was not bound to make extraordinary efforts to prevent it from freezing ; and that the plaintiff, by shipping his goods without any special contract for unusual care, when they were or might be exposed to danger from freezing, assumed the risk himself. We do not at all question this proposition of law, when properly applied. *Sweetland* v. *Boston, etc.*, *R. Co.*, 102 Mass. 282. We held the same in substance at the present term in regard to an injury to butter by heating, where it was shipped in hot weather. *Wetzell* v. *Chicago, etc.*, *R. Co.*, No. 12 Mo. App. 599. But the evidence in this record does not show that these cheeses, reasonably protected, shipped in the usual way, would have frozen, and the fact that those contained in the other car were not frozen, is the best evidence of

this. The evidence here concerning the temperature at different points along the line of the transit, and at different periods of the transit, was not such as to show that the cheese could not, by the exercise of reasonable care on the part of the defendant's servants, have been protected from freezing. The ule, as the counsel for the defendant states it, would have justified the defendant in shipping the cheese on a flat car, on the theory that the shipper takes the risks of temperature and weather. This, of course, is not the law. Both the shipper and carrier must act reasonably. If the shipper forwards his goods at a temperature so low that the carrier cannot, by the exercise of reasonable care, and by the use of reasonable means, protect them from freezing, of course the loss must fall upon the shipper. But if the carrier can, by the exercise of such care, and the use of such means, protect them- from freezing, but they nevertheless freeze, the loss must fall upon him.

Finally, it is argued that the plaintiff was not entitled to have his goods shipped through without a change of cars, or to have them shipped in refrigerator cars at all, and that the court erred in telling the jury that they might consider the evidence as to refrigerator cars as having a bearing upon the question whether the defendant used reasonable care. We do not agree to the proposition, as applicable to the evidence in this case. There may be circumstances where the carrier will act unreasonably in transferring goods from one car to another. If, for instance, he cannot so transfer them without their becoming frozen, it is unreasonable for him to do so, that in order to promote his mere convenience. And while, as we held in the case just cited, and as the learned judge instructed the jury in this case, it cannot be said as matter of law, that in the absence of special contract, the carrier is bound to furnish any particular kind of car,—as, for instance, a refrigerator car,—yet the circumstances may be such that it may be a fair question for a jury whether he acted reasonably in not furnishing such a car.

The circumstances of the case of *Wetzell* v. *Chicago, etc., Railroad Company* (*supra*) were not such as justified the putting of this question to the jury, because there the defendant had no refrigerator car at the time and place at which it had recieved the butter to be forwarded, and, in the regular course of its business, could not have had such a car there for several days thereafter. But here the plaintiff's agent at Sheboygan asked the agents of the Milwaukee, Lake Shore, and Western Railroad for cars in which to ship this cheese to East St. Louis. Two refrigerator cars belonging to the defendant company were tendered to them for this purpose. On previous occasions, when these shippers had desired to ship cheese to St. Louis, they had ordered the cars for that purpose in the same way, and they never had experienced any trouble in their going through. They may, therefore, have acted upon the reasonable assumption that the cheese would be allowed to make the transit in these cars, and there is no evidence that they had any notice or intimation to the contrary. If, under the circumstances, the defendant, for its own convenience, took the responsibility of transferring it to other cars in which it was less protected from freezing, we think it not improper to leave it to a jury to say whether, in so doing, the defendant acted reasonably under the circumstances. Briefly, a railway carrier is not, as matter of law, bound to furnish refrigerator cars; but there may be circumstances where it will be unreasonable not to do so; and it was fairly a question for the jury whether such circumstances existed in the present case.

The instructions offered by the defendant and refused by the court were, it is perceived, merely amplifications couched in a negative form of expression, of instructions which the court had already given of its own motion. It was, therefore, not error to refuse them. The judgment must be affirmed. Judge BAKEWELL concurs; Judge LEWIS is absent.